11 McCLENDON, Judge,
dissents.
In reviewing this case, we must begin with the well-settled premise that taxing statutes must be strictly construed against *276 the taxing authority. Goudchaux/Maison Blanche, Inc. v. Broussard, 590 So.2d 1159, 1161 (La.1991). Therefore, to prevail herein under LSA-R.S. 33:2845.1 A, the plaintiff had the burden of proving by a preponderance of the evidence two essential elements of its cause of action. That is, it had to show by a preponderance of the evidence that the taxes were “collected” and the defendant “willfully” failed to remit the taxes. I believe the plaintiff failed to prove the willful element of its cause of action. On that basis, I respectfully dissent without reaching the issue of whether the plaintiff proved that the taxes were actually collected.
By letters dated November 6, 1996, the Louisiana Department of Revenue (hereinafter the “Department”) authorized Tigator, Inc. and Bayou [ ¡¡Kritter, Inc., Louisiana corporations[1] domiciled in West Baton Rouge Parish, to remit state sales and use taxes on purchases of tangible personal property directly to the Department pursuant to LSA-R.S. 47:306.1. The effective date of the letters was July 3, 1996. Tigator and Bayou Kritter provided copies of these letters to S & W Services, Inc., a Louisiana corporation with facilities in West Baton Rouge Parish, and requested that S & W not invoice them for sales taxes on tangible personal property used in servicing and repairing their 18-wheel tractor-trailer rigs. Prior to the effective date of the Department’s letters, S & W had collected an 8% sales tax on all transactions with Tigator and Bayou Kritter, 4% of which was collected for the State of Louisiana and 4% for West Baton Rouge Parish. In an effort to comply with the letters from the Department, in September of 1996, S & W began collecting a 4% sales tax on all parts and labor it supplied to Tigator and Bayou Kritter, and did so throughout the remainder of the audit periods. With respect to its other customers, it continued to collect an 8% sales tax, 4% for the State of Louisiana and 4% for West Baton Rouge Parish.
The Sales and Use Tax Department for the Parish of West Baton Rouge conducted audits of S & W for the periods of January of 1996 through September of 1998 and October of 1998 through July of 1999. As a result of these audits, it determined that 5 & W owed sales tax on the parts used in servicing and repairing tractor-trailers for Tigator and Bayou Kritter and issued assessments to S & W in October of 1999 and November of 1999. S & W did not appeal the assessments.
On August 8, 2000, J. Roger Bergeron, in his capacity as Director of 13the Sales and Use Tax Department for the Parish of West Baton Rouge (hereinafter the “Parish”) filed suit against S & W for its tax debt and obtained a judgment in the sum of $91,723.86, plus penalties, interest and attorney’s fees. S & W did not appeal that judgment. Subsequently, a judgment debtor examination revealed that S & W, which ceased operations in July of 1999, had no assets.
Pursuant to LSA-R.S. 33:2845.1 A, the Parish filed suit against Preston W. Albert, Jr., who at all pertinent times was president and chief executive officer of S & W, seeking to recover the taxes owed by S 6 W from Mr. Albert. After hearing the matter, the trial court rendered judgment in favor of the Parish and against Mr. Albert in the sum of $91,723.86, plus interest, penalties and attorney’s fees. Mr. Albert appealed, asserting that the trial court erred in imposing liability on him as the Parish failed to carry its burden of proving that S & W collected and willfully failed to remit the taxes at issue.
*277 In reviewing a trial court judgment, the appellate courts of the State of Louisiana are granted by the constitution the authority to review both law and facts. La. Const, art. V. § 10(B). An appellate court may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989).
14At trial, Kimberly Deaton, who conducted the audits for the Parish, testified that, during the audit periods, S & W charged Tigator and Bayou Kritter a 4% sales tax on all parts and labor, but its invoices did not indicate whether the tax was collected for the State of Louisiana or West Baton Rouge Parish. However, S & W’s general leger showed that S & W remitted sales tax to both the State of Louisiana and to West Baton Rouge Parish. Ms. Deaton testified that she concluded that the 4% tax was collected entirely for West Baton Rouge Parish because, during her initial conversation with Mr. Albert at the beginning of the audits, Mr. Albert showed her the letters from the Department and said he was proceeding under the requirements of LSA-R.S. 47:306.1. Since the letters were from the State of Louisiana, Ms. Deaton assumed S & W was collecting no tax for the State of Louisiana and the entire 4% sales tax was collected for West Baton Rouge Parish. However, Ms. Deaton admitted that Mr. Albert never told her that S & W was charging the entire 4% sales tax on behalf of West Baton Rouge Parish.
At trial, J. Roger Bergeron, the Director of the Sales and Use Tax Department for the Parish of West Baton Rouge and Ms. Deaton’s immediate supervisor, explained the Parish’s position as follows, “[F]our percent tax was collected on transactions throughout the audit period, which we believe to be West Baton Rouge Parish tax, and the tax was not fully remitted on transactions we believe to be fully taxable.” He testified further that the Parish relies solely on Ms. Deaton’s testimony concerning Mr. Albert’s comments at her initial visit to S & W in asserting that the entire sum was collected on behalf of West Baton Rouge Parish.
Mr. Ordrie Ortego, a retired accountant, testified on behalf of the defendant. Mr. Ortego worked, at all pertinent times, for S & W as a 1 ¡¡consultant, advising the company about financial, business and tax matters. Mr. Ortego testified that the application of LSA-R.S. 47:306.1, as authorized by the Department’s letters dated November 6, 1996, required S & W to collect and remit taxes only on the labor costs that it billed to Tigator and Bayou Kritter. However, due to its accounting system, S & W could assess only one tax rate to each customer for all services and materials it provided to that customer. Therefore, it could not assess 8% on labor and no tax on parts as required by LSA-R.S. 47:306.1. To manage this inadequacy in its accounting system, S & W reviewed its transactions with Tigator and Bayou Kritter and determined that, of the services and repairs it provided to Tigator and Bayou Kritter, approximately one-half of the costs were attributable to parts and one-half were attributable to labor. On this basis, S & W estimated the tax liability of Tigator and Bayou Kritter was 8% of 50% of its costs and collected the estimated sums by assessing a 4% tax on all parts and labor, 2% for West Baton Rouge Par *278 ish and 2% for the State of Louisiana. Although 4% was charged on the entire amount, S & W only remitted to the State of Louisiana and West Baton Rouge Parish the tax due on the labor element of Tigator’s and Bayou Kritter’s invoices. It paid no taxes to either the State of Louisiana or to West Baton Rouge Parish on the parts used to service and repair the tractor-trailers. S & W, Tigator and Bayou Kritter agreed that, on a monthly basis, S & W would compute the actual tax liability and refund any overcharged sums; however, S & W had not refunded any sums prior to the audit. Upon completion of the Parish’s audits in July of 1999, S & W immediately refunded the sums collected in excess of the taxes due on the labor expenses.
The Parish asserts that the act of refunding the taxes, rather than remitting them to the Parish, alone is sufficient to prove the willful failure to Lremit. I disagree. S & W simply developed and executed a plan to act within the dictates of the letters authored by the Department in November of 1996. The delay in refunding funds until the auditor for the Parish advised S & W that it continued to hold moneys paid in excess of the tax liability for labor costs does not constitute a willful failure to remit or account for taxes collected.[2] Furthermore, even if S & W’s interpretation of the Department’s letters was erroneous as asserted by the Parish, such is also insufficient to constitute the willful act of not remitting collected taxes. This record is void of any evidence that Mr. Albert or any employee of S & W willfully failed to remit or account for taxes collected. Therefore, the trial court manifestly erred in concluding that the Parish proved that any failure to remit taxes was willful, an essential element of the Parish’s case.
Undisputedly, the review of an appellate court is limited to manifest or clear error. Stobart v. State, 617 So.2d 880, 882 (La.1993). However, an appellate court is not required to follow blindly the factual determinations of a trial court without discerning whether the court’s discretion in evaluating facts and credibility has been abused. The great latitude and discretion afforded the trier of fact must always be buttressed by sound judgment. Herein, the factual determinations of the trial court are not supported by evidence of record. Therefore, I would reverse the judgment of the trial court.[3]

. The majority refers to Tigator, Inc. and Bayou Kritter, Inc. as companies, and refers to S & W, Inc. as a repair service. However, at all times pertinent to this litigation, these three entities were valid Louisiana corporations.

. It is noteworthy that there is no evidence in the record of any official notification to S & W by the Parish of additional tax liability on behalf of S & W prior to S & W's act of refunding the excess taxes collected to Tigator and Bayou Kritter.

. I do not reach the issue of whether the taxes were ever collected having found that the willful element of the Parish's case was not proven.